**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE**

Civil Case No. 08-cv-02478-LTB

JOSE I. BERMUDEZ, JR.,

      Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

_____

**ORDER**
_____

      Plaintiff, Jose Bermudez, Jr., appeals the final decision of Michael J. Astrue, Commissioner of Social Security, denying his application for Social Security Disability benefits and Supplemental Security Income benefits. Following a December 27, 2007, hearing, the Administrative Law Judge ("ALJ") issued an unfavorable decision on January 30, 2008. The Appeals Council determined there was no basis for changing the ALJ's decision, thus making it the Commissioner's final decision. Plaintiff has exhausted his administrative remedies and this case is ripe for judicial review. Jurisdiction is proper under 42 U.S.C. § 405(g). Oral argument would not materially assist the determination of this appeal. After consideration of the parties' briefs and the administrative record, and for the reasons set forth below, I REVERSE and REMAND.

**I. BACKGROUND**

      Plaintiff was born on January 23, 1964, and was forty-three years of age at the time of the hearing. [Administrative Record "AR" 82]. He has an eighth grade education. [AR 120]. He

previously worked as a floor installer. [AR 116]. Plaintiff claims he is disabled because of schizophrenia, depression, anxiety, back pain, shoulder pain, and knee pain. [AR 115]. Plaintiff's alleged onset date is February 1, 2006, the last date he worked. [AR 115].

### A.  Plaintiff's Medical History

Plaintiff has a history of multiple suicide attempts beginning at age 15. [AR 231–32, 236–37]. In March 2006, Plaintiff was evaluated by Dr. Kailin, a psychiatrist affiliated with the Aurora Mental Health Center. [AR 197–200]. Dr. Kailin assessed Plaintiff with polysubstance dependence in early remission, and mood disorder unrelated to substance use. [AR 199–200]. Dr. Kailin assessed Plaintiff's level of functioning as a 40 on the Global Assessment of Functioning ("GAF") scale. [AR 200]. From March 2006 to August 2006, Plaintiff continued to report mood swings and suicidal thoughts, and was a no-show for several appointments. [AR 188–96]. On September 26, 2006, Dr. Kailin noted Plaintiff had moved to Pueblo and was not interested in continued therapy in Aurora. [AR 188].

Plaintiff received primary care at the Pueblo Community Health Center ("PCHC"). [AR 201–13]. On October 12, 2006, Plaintiff complained of severe depression and anxiety, and stated he had daily suicidal thoughts and a current plan to commit suicide. [AR 209]. Plaintiff stated he had been drinking and using cocaine and marijuana and believed the cocaine use contributed to his depression. [AR 207, 209]. Plaintiff was sent to an emergency room by ambulance. [AR 209]. Plaintiff was placed at Parkview Mental Health for depression and suicidal thoughts, and was discharged on October 17, 2006. [AR 207].

Beginning on October 17, 2006, Plaintiff was treated at PCHC by Dr. King. [AR 207]. On that date, Dr. King diagnosed Plaintiff with hypertension, depression, and substance abuse.

[AR 207]. On December 8, 2006, Dr. King noted Plaintiff's depression was poorly controlled with Prozac. [AR 205]. Dr. King switched Plaintiff to Wellbutrin for his depression. [AR 205–06]. On January 18, 2007, a physician's assistant at PCHC added BuSpar for depression and insomnia. [AR 203].

Plaintiff was admitted to Spanish Peaks Mental Health Center ("SPMHC") on an inpatient basis on February 8, 2007, for thoughts of suicide. [AR 280]. Plaintiff was diagnosed with major depressive disorder, cannabis abuse, alcohol dependence, and borderline personality disorder. [AR 237]. Plaintiff was assessed a GAF of 41. [AR 238]. On February 15, 2007, Dr. McNabb, a psychiatrist treating Plaintiff at SPMHC, filled out a Colorado Department of Human Services Med-9 form indicating Plaintiff was totally disabled—and would remain so for nine to eleven months—due to major depressive disorder with psychotic features, alcohol dependence, and personality disorder. [AR 224–25]. Plaintiff was discharged on February 22, 2007, with a GAF of 55. [AR 285].

On February 23, 2007, Plaintiff returned to PCHC with complaints of bilateral knee pain lasting ten years. [AR 296]. An MRI showed a meniscus tear in Plaintiff's left knee. [AR 294]. Dr. King gave Plaintiff a note saying he "should not do squatting, prolonged standing or pivoting" due to the meniscus tear. [AR 366]. On March 22, 2007, Plaintiff complained to Dr. King that his psychiatric medications were interfering with his sex life. [AR 294]. Dr. King prescribed Viagra. [AR 294]. On April 17, 2007, Plaintiff complained of pain in his right calf and foot. [AR 289]. Dr. King gave Plaintiff a note saying "he is unable to work at this time," and further noted Plaintiff was unable to perform any manual labor with his left knee or right leg problems. [AR 288, 366]. At a follow-up visit on May 4, 2007, Dr. King noted Plaintiff

exhibited 5/5 strength in all extremities. [AR 362]. Dr. King instructed Plaintiff to return to full activities as far as Plaintiff's back was concerned, but noted continued limitation in Plaintiff's knee. [AR 361].

In May 2007, a state agency single decisionmaker ("SDM") completed a physical residual functional capacity assessment form and checked a box indicating the form was completed without a statement from Plaintiff's treating physician. [AR 328–35]. The SDM stated Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently; could stand, walk, and sit for six hours in an eight hour work day; could climb, stoop, and crouch occasionally; and could balance, kneel, and crawl frequently. [AR 329–30]. A state psychiatrist also completed a separate psychiatric review, but determined there was insufficient evidence in Plaintiff's record to determine whether Plaintiff's mental conditions were functionally limiting. [AR 337–350].

In November 2007, Plaintiff asked Dr. King to fill out forms prior to Plaintiff's disability hearing. [AR 358]. On the forms, Dr. King indicated Plaintiff was able to lift a maximum of ten pounds for up to one-third of an eight hour day; had no limitations in his ability to sit; was limited to standing for four hours in an eight hour workday; experienced moderate pain that was occasionally treated with narcotics; did not experience pain that would be severe enough to require Plaintiff to miss work; could squat, crawl, or kneel less than ten times per day; and could stoop up to one-third of the time in a work day. [AR 363–65].

### B. Disability Hearing

At Plaintiff's hearing on December 27, 2007, Plaintiff testified he had a torn meniscus in his left knee that had not been remedied by surgery. [AR 25]. Plaintiff testified the tear caused

him daily pain and limited his walking to about a block and a half without rest. [AR 26–27]. Plaintiff testified he had back spasms three or four times per day, but an MRI test had not shown any cause. [AR 27]. Plaintiff's back pain limited his ability to bend or walk, and prevented him from sitting for more than two or three hours. [AR 27–28]. Plaintiff testified he was diagnosed with depression and bipolar disorder, and sometimes heard voices. [AR 29]. Plaintiff received some relief from these symptoms when he took his medications, but the medications caused drowsiness and did not completely resolve the symptoms. [AR 29]. Plaintiff believed he could not work a desk job because he had difficulty concentrating and did not like constructive criticism or stressful situations. [AR 31–32].

The ALJ then questioned a vocational expert ("VE") regarding Plaintiff's past relevant work. The ALJ first asked whether a hypothetical person with the same age and education as Plaintiff—and who was limited to light work with no kneeling, crawling, or climbing ladders or scaffolds; who could only perform non-complex tasks requiring a specific vocational preparation ("SVP") level of three or less and a general educational development ("GED") level of three or less, and who was limited to occasionally dealing with the public, co-workers, and supervisors—could perform Plaintiff's past relevant work as a floor installer. [AR 34]. The VE testified that the hypothetical person could not perform such work, but that the hypothetical person could perform other jobs including fast food worker, garment hanger, or laundry room worker. [AR 35]. The ALJ next asked whether a person with the same age and education as Plaintiff—and who could carry ten pounds occasionally; could stand or walk a maximum of four hours a day and who must sit the remaining four hours; could squat, crawl, and kneel less than ten times per day; and could occasionally stoop—would be able to perform any jobs. [AR 36].

The VE responded that the hypothetical person could not perform any jobs. [AR 36].

### C.  ALJ Ruling

In his ruling, the ALJ applied the five-step sequential evaluation process outlined in 20 C.F.R. § 404.1520.  Applying the first step, the ALJ determined Plaintiff had not performed substantial gainful activity since his onset date of February 1, 2006.  [AR 14].  Applying the second step, the ALJ determined Plaintiff had five severe impairments: substance addiction disorder, affective disorder, right shoulder pain, left knee meniscus tear, and cervical pain.  [AR 14].  Applying the third step, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [AR 24].  Applying the fourth step, the ALJ determined Plaintiff was unable to perform past relevant work as a floor installer.  [AR 19].  Applying the fifth step, the ALJ found Plaintiff was able to perform the jobs of fast food worker, garment hanger, and laundry room worker, and, accordingly, that Plaintiff was not under a disability as defined in the Social Security Act.  [AR 20].  In reaching this conclusion, the ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform work with a light exertional level; with no kneeling, crawling, or climbing ladders or scaffolds; with no requirement that Plaintiff perform complex tasks; with a limitation to SVP and GED levels of three or less; and with only occasional contact with the public, co-workers, and supervisors.  [AR 15].

The ALJ noted that Plaintiff had worked only sporadically prior to his alleged onset date and that Plaintiff had reported working for his nephew after his alleged onset date.  [AR 16–17].  The ALJ found this "raise[d] a question as to whether the claimant's reported continuing unemployment is actually due to medical impairments."  [AR 17].  The ALJ also noted Plaintiff

"has not generally received the type of medical treatment one would expect for a totally disabled individual, with relatively infrequent trips to the doctor for the allegedly disabling symptoms and significant gaps in the history of treatment." [AR 17]. Plaintiff's medical history was found by the ALJ to be "generally remarkable for as much treatment, if not more, for drug and alcohol issues than for the claimant's other allegedly disabling impairments." [AR 17]. The ALJ noted Plaintiff continued to use cocaine and marijuana at least through February 2007. [AR 17–18]. The ALJ also noted Plaintiff had a history of missing appointments and infrequent treatment for both his mental and physical health issues. [AR 17–18].

The ALJ reviewed Plaintiff's medical record for opinions from treating or examining physicians indicating Plaintiff was disabled, and found such opinions to be nonexistent. [AR 18]. The ALJ determined that the Med-9 form authored by Dr. McNabb in February 2007 did not show "the claimant as unable to engage in any substantial gainful activity by reason of any determinable impairment or combination of impairments that could be expected to last for a continuous period of not less than 12 months." [AR 18]. Referring to the handwritten note given to Plaintiff by Dr. King on April 17, 2007, the ALJ noted that the note stated only that Plaintiff was unable to work "at this time," and did not state a time period during which Plaintiff would remain unable to work. [AR 18]. The ALJ discounted Dr. King's November 2007 opinion that Plaintiff was able to lift a maximum of ten pounds for up to one-third of an eight hour day because the form used failed "to address a great number of issues regarding the claimant's functioning, as the national form does, such as exertional limitations for pushing/pulling, postural limitations for climbing and balance, and no consideration for visual, communicative, or environmental aspects." [AR 19]. The ALJ also discounted Dr. King's

November 2007 opinion as "internally unsupported" and because "treatment records from Dr. King, particular those at the time Dr. King filled out the forms, as well as treatment records from other medical providers, fail to support objective clinical findings for such limitation." [AR 19]. Accordingly, the ALJ concluded "the claimant's statements concerning his impairments and their impact on his ability to work are not entirely credible in light of the medical evidence and the discrepancies between the claimant's allegations and the information contained in the documentary reports." [AR 16].

## II. STANDARD OF REVIEW

My review in a Social Security appeal is limited to whether the final decision is supported by substantial evidence and the correct legal standards. *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Although I do not reweigh the evidence or try the issues *de novo*, I must examine the record as a whole—including anything that may undercut or detract from the ALJ's findings—in order to determine if the substantiality test has been met. *Id*. at 1262. Evidence is substantial if it amounts to "more than a scintilla, but less than a preponderance; it is such evidence that a reasonable mind might accept to support the conclusion." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987). Evidence is not substantial if it is overwhelmed by other evidence in the record, or constitutes a mere conclusion. *Grogan*, 399 F.3d at 1261–62. If the ALJ's decision is not supported by substantial evidence, or if the ALJ failed to provide a sufficiently clear basis from which I may determine the appropriate legal standards were applied, I may reverse. *Washington v. Shalala*, 37 F.3d 1437, 1440 (10th Cir. 1994).

## III. DISCUSSION

Plaintiff raises three issues on appeal: (1) the ALJ's findings regarding Plaintiff's mental

RFC were not supported by substantial evidence and the correct legal standards; (2) the ALJ improperly weighed the opinions of the SDM; and (3) the ALJ improperly rejected the opinions of Drs. McNabb and King. Because the issues involve similar questions, I consider them together.

The ALJ determined that Plaintiff retained the mental residual functional capacity to perform tasks that are not complex and to have only occasional contact with the public, co-workers, and supervisors. [AR 15]. When determining a claimant's mental RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *7.

As noted by Plaintiff, the ALJ cited no medical opinion supporting his conclusions regarding Plaintiff's mental RFC. Similarly, however, Plaintiff points to no evidence in the record—other than his own testimony at the hearing—showing his mental RFC to be other than that determined by the ALJ. The only evidence addressing the impact of Plaintiff's mental health issues on his ability to work was the Med-9 form filled out by Dr. McNabb in February 2007. On this form, Dr. McNabb checked a box indicating Plaintiff was unable to work at any job, and checked another box stating that Plaintiff's condition would last nine to eleven months. [AR 224–25]. Med-9 forms—like all "check-the-box" forms—are considered weak evidence of a disabling condition. *See Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987).

Even if the ALJ found the Med-9 form to be substantial evidence of a disabling condition, however, the form does not indicate whether Plaintiff was under a disability expected to last twelve months or more—a prerequisite for an award of Social Security benefits. *See* 42

9

U.S.C. § 423(d). Because Dr. McNabb had the option of checking a box indicating the disability would last twelve or more months—but instead checked the nine-to-eleven-month box—the ALJ was entitled to presume that, at least as of February 2007, Dr. McNabb did not believe Plaintiff's disability would last longer than eleven additional months, nor shorter than nine additional months. *See, e.g., Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007). The form does not indicate, however, at what date Plaintiff became unable to work and, accordingly, does not speak to the necessary underlying inquiry of whether Plaintiff's condition persisted for twelve or more continuous months. *See* 42 U.S.C. § 423(d).

The Tenth Circuit teaches that an ALJ is obligated to base his RFC findings on record evidence. *See Fleetwood v. Barnhart*, 211 F. App'x 736, 740–41 (10th Cir. 2007). If the file contains insufficient evidence to make an RFC finding, the ALJ is required to further develop the record. *See id.* That is clearly the case here, as noted by the state psychiatrist who reviewed Plaintiff's medical record and—although she determined Plaintiff suffered from medically determinable depression and alcohol and cocaine abuse—found the record insufficient to determine the degree of Plaintiff's mental limitation. [AR 337–351]. Under such circumstances, the ALJ should have contacted Plaintiff's treating physicians for additional clarification or ordered a consultative examination. *See Fleetwood,* 211 F. App'x at 740–41.

A similar problem arises within the context of the ALJ's physical RFC determination. The physical restrictions reflect those determined by the SDM in her May 2007 assessment, and discount the opinions of Plaintiff's treating physician, Dr. King. [AR 328–335]. The ALJ's rationale for discounting Dr. King's opinion, however, was not based upon the required two-step framework laid out in *Watkins v. Barnhart*, 350 F.3d 1297 (10th Cir. 2003). Instead, the ALJ

based his conclusion on a finding that Dr. King's opinions—which, like Dr. McNabb's, included both an opinion that Plaintiff was entirely unable to work for an uncertain amount of time and a check-the-box form that did not provide a full picture of Plaintiff's limitations—were insufficient to determine Plaintiff's ability to work. [AR 18–19]. In light of Dr. King's uncontradicted opinion—which was supported by Plaintiff's medical records, including an MRI—that Plaintiff was, at some point, entirely unable to work, the ALJ was required to further develop the record before making his physical RFC finding. *See Fleetwood*, 211 F. App'x at 740–41 (10th Cir. 2007). Relying on the opinion of the nonexamining, nonphysician SDM was insufficient. *See id.*; *see also Frey*, 816 F.2d at 515; Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *2.

## IV.  CONCLUSION

Because a disability hearing is nonadversarial, an ALJ is obligated to develop the record even where—as here—the claimant does not make such a request. *See Thompson v. Sullivan*, 987 F.2d 1482, 1492 (10th Cir.1993); *Hawkins v. Chater*, 113 F.3d 1162, 1164–68 (10th Cir.1997). The need for additional documentation should have been apparent from the administrative record, and the ALJ was therefore obligated to obtain more evidence regarding Plaintiff's functional limitations. *See Hawkins*, 113 F.3d at 1167–68. The ALJ's failure to further develop the record shows his decision was not based on substantial evidence. *See Fleetwood*, 211 F. App'x at 741. On remand, the ALJ may obtain evaluations of Plaintiff's functional limitations from his treating doctors in a format that will be of use to the ALJ and/or may obtain a detailed evaluation from a consulting doctor. *See id.* In either case, the ALJ must

"make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *5.

Accordingly, IT IS ORDERED that the January 30, 2008, administrative decision is REVERSED and REMANDED to the Commissioner with directions to remand to the Administrative Law Judge for proceedings consistent with this opinion.

Dated: July   23  , 2009.

BY THE COURT:

  s/Lewis T. Babcock
Lewis T. Babcock, Judge